Filed 4/18/13  University Partners v. Maryland Casualty CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| UNIVERSITY PARTNERS, LLC, et al., | C065521 |
| Plaintiffs and Appellants, | (Super. Ct. No. 07AS03379) |
| v. | |
| MARYLAND CASUALTY COMPANY et al., | |
| Defendants and Respondents. | |
| UNIVERSITY PARTNERS, LLC, et al., | C067398 |
| Plaintiffs and Appellants, | |
| v. | |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant and Respondent. | |

1

Plaintiffs University Partners, LLC (University Partners), and its managing member, Thomas Westley, appeal from a judgment of dismissal following orders granting summary adjudication and sustaining demurrers of plaintiffs' property insurers, Maryland Casualty Company (Maryland), Northern Insurance Company of New York (Northern), and Zurich American Insurance Company (Zurich) (hereafter collectively defendants). Plaintiffs contend issues of fact remain on their claims against defendants stemming from the latter's refusal to pay the full replacement cost of plaintiffs' building after it was destroyed by fire. According to plaintiffs, the record contains evidence that, several years before the fire, defendants participated in various misrepresentations made by their agent, defendant Cummins Insurance Agency (Cummins), that induced plaintiff to switch from an insurance policy with guaranteed replacement cost (GRC) coverage (the Fireman's Fund policy), that would have provided full replacement cost of their building, to policies with only replacement cost (RC) coverage, that provided only partial replacement cost.

Plaintiffs do not contend defendants misled them into believing they were receiving GRC coverage, inasmuch as there is no evidence in the record to support such a claim. Instead, plaintiffs contend Cummins made certain misrepresentations as to the nature of the insured premises in the application for insurance. In particular, the application falsely stated that the building had a sprinkler system and that it was built of fire resistant materials. Plaintiffs assert these misrepresentations were made in order to reduce the price of the policy offered by defendants to below that of the Fireman's Fund policy, thereby inducing plaintiffs to switch coverage. Plaintiffs further assert defendants became aware of these misrepresentations but failed to adjust the price of the policy accordingly, thereby acquiescing in Cummins's "price fraud."

We reject plaintiffs' novel "price fraud" theory. The misrepresentations they allege were not directed at plaintiffs but at defendants in order to induce defendants to provide coverage to plaintiffs at a price below what it would otherwise have been.

2

Neither defendants nor Cummins misrepresented to plaintiffs the nature of the policy being provided or the price to be paid for it.  Plaintiffs received exactly what they bargained for.

Plaintiffs' claim boils down to this:  They were given too good a deal.  If the price charged for RC coverage had been based on the true characteristics of their building, i.e., built of wood with no sprinklers, the price of the insurance would have been higher.  Instead, they were given the policy at a reduced rate, which induced them to switch coverage.  And, but for that switch, plaintiffs would have retained GRC coverage under the Fireman's Fund policy and would have recovered the full replacement cost of the building.

However, this is not a claim for negligent or intentional misrepresentation but the natural result of free-market competition.  In the absence of antitrust considerations, the supplier of a product is not prohibited from selling that product at cut-rate prices.  Absent misrepresentations to the customer about the nature of the product, one who buys a lower-priced product based on price alone may not later claim he was duped out of buying the higher-priced product which, as it later turns out, might have proven a better fit.

Because this is the essence of plaintiffs' claim, we affirm the judgment of dismissal.

## FACTS AND PROCEEDINGS

Prior to July 27, 2005, Westley was the managing member of University Partners, LLC, the successor in interest of 300 University Avenue, Ltd. (University Partners).  University Partners owned a building located at 300 University Avenue in Sacramento (Building).  On that date, the Building was destroyed by fire.

Prior to May 30, 2001, the Building was insured under a policy issued by Fireman's Fund Insurance Company and obtained from defendants John O. Bronson, a

3

California corporation, and one of its employees, Paul F. Bystrowski (hereafter collectively Bronson). Although the Fireman's Fund policy contained a coverage limit of $2,431,000, it included a policy amendment for GRC coverage, which provided that, in the event of a covered loss of the Building, the insurer would pay the full amount required to rebuild the structure without regard to the coverage limit.

Prior to the renewal date of the Fireman's Fund policy, University Partners approached Cummins to determine if it could obtain equivalent coverage at a lower price. Bronson had previously prepared a one-page document titled "Evidence of Property Insurance" (the Evidence Form) that briefly listed the coverage provided in the Fireman's Fund policy. However, the Evidence Form misstated the coverage limit as $2,341,000, rather than $2,431,000, and indicated the policy provided RC coverage rather than GRC coverage. University Partners was unaware of any misstatements in the Evidence Form and provided it to Cummins. The actual Fireman's Fund policy was not provided. University Partners informed Cummins the Building was of frame construction and did not tell Cummins the Building contained sprinklers.

Cummins submitted to Zurich an application for insurance that erroneously described the Building as containing sprinklers and being built with fire resistant materials. The application was not signed by plaintiffs. Cummins also provided Zurich with the Evidence Form.

Zurich prepared a written offer of insurance through its subsidiary, Northern, based on the information contained in the application and the Evidence Form. The premium price was $1,600 per year, which was well below the renewal price for the Fireman's Fund policy. Cummins forwarded the offer to plaintiffs with a cover letter indicating the coverage duplicated that of the Fireman's Fund policy. In fact, however, the offer was for RC coverage rather than GRC coverage. It also contained a coverage limit of $2,341,000 rather than the $2,431,000 limit of the Fireman's Fund policy.

4

Cummins was unaware before the fire that the Fireman's Fund policy provided GRC coverage.

University Partners agreed to the offered policy (the Northern policy). However, when University Partners contacted Bronson to cancel the Fireman's Fund policy, Bronson indicated it had previously rated the coverage of the Fireman's Fund policy with Zurich and found the Zurich price to be $300 higher than that of the Fireman's Fund policy. Bronson suggested that University Partners might want to verify the accuracy of the Northern policy. Westley thereafter contacted Cummins and asked why University Partners was receiving such a favorable price. Westley asked if the coverage was the same as the Fireman's Fund policy and Cummins indicated it was. Westley also asked if the size of the Building was correct and was told it was. Westley asked if the policy contained RC coverage and was told it did. Cummins explained the reason for the price difference was an error regarding the nature of the insured Building.

Westley informed Cummins that it would not cancel the Fireman's Fund policy until the price issue for the Northern policy was resolved. Westley further informed Cummins that the only reason University Partners was agreeing to switch coverage was because the Northern policy contained the same coverage for less money. Cummins later informed University Partners that they had made arrangements with Zurich to stand by the quoted price. Plaintiffs agreed to retain the Northern policy and cancel the Fireman's Fund policy.

The Northern policy remained in effect from May 30, 2001 to May 30, 2002, when it was replaced by an equivalent policy issued by Maryland (the Maryland policy). The Maryland policy remained in effect until the fire. Over the years, the coverage limit on the Maryland policy increased such that, by May 30, 2005, it had reached $2,999,000. Both the Northern and the Maryland policies provided RC coverage.

As noted earlier, the Building was destroyed by fire on July 27, 2005. At the time, the cost to replace the Building was $4,864,613, well above the Maryland policy limit.

5

University Partners therefore decided not to rebuild and was paid $3,010,914 under the Maryland policy.

Plaintiffs made arrangements with International Adjusting Service (International) to adjust their insurance claim. International contacted Zurich, claiming $1,478,172 in unpaid replacement cost. Zurich referred the matter to legal counsel.

Plaintiffs initiated this action against Maryland, Cummins, Bronson, and two Cummins employees, Dick Dotters and Debbie Cummins. The first amended complaint contained eight causes of action: (1) negligent inducement to enter into the Maryland policy, (2) negligent adjustment of the policy limits, (3) breach of oral contract to adjust the policy limits, (4) breach of express or implied contract to adjust policy limits, (5) negligent misrepresentation of the terms of the Fireman's Fund policy, (6) declaratory relief, (7) fraudulent inducement to enter into the Northern policy, and (8) a separate claim for damages on behalf of Westley. Plaintiffs later added Northern as a defendant.

Bronson demurred to the first amended complaint, asserting the fifth, sixth and eighth causes of action fail to state a claim against them. The trial court sustained the demurrers without leave to amend. The court concluded there were no material misrepresentations in the Evidence Form and no reasonable insured or insurance agent would have relied on it without reading the insurance policy itself. According to the court, the Evidence Form does not invite the insured to rely on it but rather refers the insured to the insurance policy. Furthermore, according to the trial court, even if the Evidence Form invited plaintiffs to rely on it, plaintiffs had ample opportunity over the next several years to review the Northern and Maryland policies to discover that it did not include GRC coverage like that in the Fireman's Fund policy. Finally, the court concluded the sixth cause of action is moot by virtue of the court's ruling regarding the fifth cause of action, and Westley did not oppose the demurrer to the eighth cause of action. The court thereafter entered judgment of dismissal in favor of Bronson.

6

Plaintiffs appealed, and we affirmed. In an unpublished opinion (*University Partners v. John O. Bronson* (July 29, 2009, C058893) (*University Partners I*)), we concluded plaintiffs had no viable claim against Bronson. On the fifth cause of action for negligent misrepresentation of the terms of the Fireman's Fund policy, we concluded plaintiffs' reliance on the Evidence Form in applying for replacement insurance was not reasonable and they had a duty instead to examine the terms of the Fireman's Fund policy themselves. We further concluded there was no evidence to suggest the Evidence Form was prepared with intent to influence plaintiffs to switch coverage. Finally, we concluded plaintiffs had ample opportunity to obtain GRC coverage before the fire if that is what they wanted. Because plaintiffs raised no arguments on appeal as to the sixth and eighth causes of action, we affirmed the trial court's order sustaining demurrers to those claims as well.

On January 8, 2009, the trial court granted summary adjudication on the fifth cause of action for all remaining defendants. Plaintiffs do not challenge that ruling on appeal.

On January 22, 2009, Northern and Maryland moved for summary adjudication of the second, third and fourth causes of action. On May 18, 2009, the trial court granted the motion. Again, plaintiffs do not challenge that ruling on appeal.

On February 5, 2010, Maryland and Northern moved for summary judgment or, in the alternative, summary adjudication on all remaining claims. While this motion was pending, plaintiffs added Zurich as a defendant. On June 7, 2010, the trial court issued its order granting the motion for summary adjudication of Northern and Maryland. On June 23, the trial court entered judgment of dismissal in favor of Northern and Maryland. Plaintiff appeals from that order (C065521).

On November 10, 2010, plaintiffs filed a second amended complaint, in which they added a cause of action for civil conspiracy. Zurich demurred to the second amended complaint. On February 1, 2011, the trial court sustained Zurich's demurrers

7

without leave to amend and entered judgment of dismissal. Plaintiffs appeal from that judgment (C067398).

We have consolidated these two appeals for all purposes.

DISCUSSION

In its ruling granting summary adjudication to Northern and Maryland on the first (negligent misrepresentation) and seventh (intentional misrepresentation) causes of action, the trial court concluded those insurers provided plaintiffs exactly what they and Cummins requested, RC coverage, and the insurers made no representations that they would provide the same coverage as the Fireman's Fund policy. The court further concluded plaintiffs failed to present sufficient evidence that the insurers are vicariously liable for any representations made by Cummins as their agent. Finally, the court concluded plaintiffs are estopped by our prior ruling in *University Partners I* from claiming that any alleged misrepresentation caused them not to have GRC coverage at the time of the fire. Having so concluded, the court also granted summary adjudication on the sixth cause of action, seeking declaratory relief, and the eighth cause of action, seeking relief on behalf of Westley individually. With the elimination of all other claims against the insurers, those derivative claims also disappear.

Plaintiffs take issue with each of the three bases relied upon by the trial court in support of summary adjudication on the misrepresentation claims. They contend the misrepresentations they allege are not limited to whether the Northern and Maryland policies provided GRC coverage. They also contend they are not collaterally estopped by our prior decision from claiming defendants' actions caused them not to have GRC coverage at the time of the accident. Finally, plaintiffs argue there is sufficient evidence that Cummins was acting as defendants' agent in connection with the matters at issue.

As we shall explain, because we find plaintiffs have not established any actionable misrepresentations on the part of either defendants or Cummins, we need not consider

8

plaintiffs' estoppel and agency arguments. Even assuming plaintiffs are not estopped to claim that misconduct by either defendants or Cummins caused them not to have GRC coverage at the time of the fire, and assuming Cummins was acting as defendants' agent for purposes of the claims asserted herein, plaintiffs have not established that either Cummins or defendants made any misrepresentations *to plaintiffs* that caused plaintiffs to replace their GRC coverage with RC coverage.

Plaintiffs contend there is sufficient evidence in the record to support their misrepresentation claims based on both conspiracy and aider and abettor theories. The misrepresentation they allege does not concern the nature of the policy being provided by Northern and Maryland. Plaintiffs do not argue defendants conspired or aided and abetted Cummins in misrepresenting to plaintiffs that the Northern and Maryland policies provided GRC coverage. Instead, plaintiffs contend Cummins engaged in "price fraud" when Cummins misrepresented the nature of the insured premises as having sprinklers and being made of fire resistant materials. According to plaintiffs, Cummins did so in order to induce defendants to offer their insurance at a rate below that of the Fireman's Fund policy, thereby in turn inducing plaintiffs to switch insurance. Plaintiffs further assert defendants participated in this price fraud when they agreed to sell the Northern policy to University Partners at this reduced price after learning that the Building had been misrepresented in the application. Plaintiffs contend: "[A] trier of fact could reasonably conclude that Cummins was engaged in a deceptive practice known commonly in the insurance industry as 'twisting,' and that [defendants], with knowledge of this fact, joined Cummins in this fraudulent plan and conspired with it to actively conceal it." According to plaintiffs: "Twisting is the deceptive practice of making misrepresentations of the terms, including price, of an insurance policy to a customer, or allowing the use of these misrepresentations, for the purpose of inducing the customer into purchasing it."

Assuming plaintiffs are correct that there is sufficient evidence of defendants' complicity in Cummins's actions, either as a co-conspirator or an aider and abettor, the hole in plaintiffs' argument is that there is no evidence of any misrepresentation by Cummins *directed at plaintiffs*. " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) In order to satisfy these elements, it is not enough that there were misrepresentations. Those misrepresentations must have been directed at the victim for the purpose of inducing the victim to rely to his or her detriment.

In this instance, neither defendants nor Cummins made any misrepresentations to plaintiffs regarding the terms of the Northern or Maryland policies. The price quoted, although artificially low, was the price charged. Although there is evidence Cummins misrepresented to plaintiffs that the policy coverage was the same as that in the Fireman's Fund policy, this was based on a misunderstanding, shared by all the parties, that the Fireman's Fund policy provided RC coverage. Thus, in representing that the Northern policy provided the same coverage as the Fireman's Fund policy, Cummins was representing that the Northern policy provided RC coverage, which was true.

Plaintiffs' fraud theory is based on misrepresentations by Cummins regarding the nature of the Building being insured. However, these were misrepresentations made by Cummins to defendants, not plaintiffs. Plaintiffs knew the nature of the insured property. If, as plaintiffs allege, Cummins purposely misrepresented the characteristics of the Building, this was for the purpose of inducing *defendants* to offer insurance at a reduced rate. The potential danger to an insured in such misrepresentations is that the insurer might later deny coverage upon learning the true facts. However, that did not occur here. On the contrary, when defendants learned the true facts, they agreed to sell the insurance

10

to plaintiffs at the reduced price and, after the fire, provided plaintiffs the full benefit of the policy.

What plaintiffs' argument boils down to is that they were sold insurance at rates lower than normal. In other words, they received a windfall from the deal. If the circumstances had been as all the parties understood them to be, i.e., that the Fireman's Fund policy provided RC coverage, plaintiffs received the full benefit of what they bought without having had to pay the full price for it.

Plaintiffs contend they were in fact harmed by the deal because, but for the change in policy, they would have recovered the full replacement value of the Building under the Fireman's Fund policy. Plaintiffs argue it was only because of the unusually low price for the Northern policy that they decided to switch. Thus, they argue, the fact they were offered an artificially low price due to Cummins's misrepresentations about the Building was a proximate cause of their loss.

We are aware of no prohibition against a seller of products or services offering them at below-market rates, or even below the seller's cost. This may not make good business sense, but it is certainly not a fraud against the purchaser who is benefited thereby. It would be as if a consumer who purchased one automobile over another based solely on price and was later injured in an accident was permitted to sue the seller on a theory that the higher-priced automobile was in fact safer and he would not have been injured if he had been driving it at the time of the accident. This is not fraud but free-market competition. As long as there were no misrepresentations about the nature of the product being purchased, e.g., the safety features of the automobile or the breadth of the insurance coverage, there is no actionable fraud in undercutting the price of a competitor.

Plaintiffs appear to acknowledge as much when they assert: "Plaintiffs are not suggesting that [defendants] normally cannot charge any price [they wish] for [their] insurance policies. Even though in the business to [sell] insurance policies, if Northern and Maryland want to give up over $3,000 a year, and over $15,000 over the length of the

11

[Northern and Maryland policies], [they] normally [have] the right to do so." However, plaintiffs go on to argue: "It is when [Zurich], with actual knowledge of Cummins' fraudulent plan and its purpose, makes the conscious decision to facilitate the commission of the tort by allowing Cummins to continue inducing University into purchasing the [Northern] policy, is Zurich subject to liability for aiding and abetting Cummins' fraud."

Once again, plaintiffs are attempting to assert a claim against defendants based on their complicity in a plan to mislead themselves into offering insurance at a reduced price. The only ones harmed in that regard were defendants. It is only because of the fortuity that the Fireman's Fund policy contained GRC coverage, a fact not known to any of the parties herein, that plaintiffs were harmed by the switch in coverage.

Plaintiffs nevertheless contend defendants had a duty to disclose all material facts relating to the policy of insurance and they failed to satisfy that duty when they neglected to inform plaintiffs of the fraud perpetrated by Cummins. We fail to see where plaintiffs are going with this argument. Plaintiffs were in fact informed by Cummins that it had misstated the nature of the insured premises, at least as to the building materials. Plaintiffs therefore knew the price they were quoted was lower than what would have been the case if the true facts had been used. Plaintiffs also knew they were being sold the Northern policy at this lower price notwithstanding the error. Finally, as explained above, the only possible fraud concerned the misrepresentations directed at defendants by Cummins, not misrepresentations directed at plaintiffs.

We conclude the trial court properly granted summary adjudication to Northern and Maryland on plaintiffs' misrepresentation claims. And those being the only remaining claims against Northern and Maryland, the court properly granted summary adjudication on the derivative claims.

Plaintiffs nevertheless contend defendants are guilty of bad faith in handling plaintiffs' claim. Plaintiffs argue "a reasonable juror could conclude that Maryland,

through Zurich . . . , did not attempt to effect a prompt, fair, and equitable settlement of University [Partners'] October 2, 2006 claim once liability had become reasonably clear. Instead, on November 22, 2006, it referred the investigation to legal counsel, implying that this referral was to reasonably investigate the claim, when in fact it was for the purpose of forcing University [Partners] into litigation."

Assuming plaintiffs adequately alleged a claim for bad faith, the problem with their argument is that it presupposes liability became "reasonably clear" to defendants before the matter was referred to legal counsel. However, the liability to which plaintiffs refer is the purported obligation of Maryland to provide plaintiffs the benefit of GRC coverage. However, the Maryland policy provided only RC coverage. Maryland paid plaintiffs the full benefit of RC coverage. As explained, above, Maryland's liability for the additional GRC coverage was certainly not clear. On the contrary, Maryland had no such obligation. Thus, Maryland's refusal to grant plaintiffs the benefit of GRC coverage cannot be the basis of a bad faith claim.

Because plaintiffs assert no independent basis for liability on the part of Zurich alone, but instead rely on a respondeat superior theory, we conclude the trial court also properly sustained Zurich's demurrers to the second amended complaint.

DISPOSITION

The judgments of dismissal in favor of Northern, Maryland and Zurich are affirmed. Defendants are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

                                                                   HULL               , J.

We concur:

      RAYE            , P. J.

      DUARTE        , J.